IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| Seanique Kenesha Pinckney, | ) | Civil Action No.: 8:17-2626-BHH |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | **ORDER** |
| Nancy A. Berryhill, Acting Commissioner of Social Security, | ) | |
| Defendant. | ) | |

This is an action brought pursuant to 42 U.S.C. §§ 405(g) seeking judicial review of the Acting Commissioner of Social Security's ("Commissioner") final decision, which denied Plaintiff Seanique Kenesha Pinckney's ("Plaintiff") claim for supplemental security income ("SSI"). The record includes the report and recommendation ("Report") of United States Magistrate Judge Jacquelyn D. Austin, which was made in accordance with 28 U.S.C. § 636 (b)(1)(B) and Local Civil Rule 73.02(B)(2)(a) (D.S.C.).

In her Report, the Magistrate Judge recommends that the Court affirm the Commissioner's final decision denying benefits. Plaintiff filed objections to the Report, and the Commissioner filed a reply to those objections. *See* 28 U.S.C. § 636(b)(1) (providing that a party may object, in writing, to a Magistrate Judge's Report within 14 days after being served a copy). For the reasons stated below, the Court adopts the Magistrate Judge's Report and affirms the Commissioner's final decision denying benefits.

## BACKGROUND

Plaintiff protectively filed for SSI in June 2013, alleging a disability onset date of December 1, 1991. Her application was denied initially and upon reconsideration, and she

requested a hearing before an administrative law judge ("ALJ"). A hearing was held on June 17, 2016. The ALJ issued a decision on August 5, 2016, denying Plaintiff's claim. The Appeals Council issued denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. Plaintiff filed this action seeking judicial review of the Commissioner's final decision on September 28, 2017.

## STANDARDS OF REVIEW

### I. The Magistrate Judge's Report

The Court conducts a de novo review to those portions of the Report to which a specific objection is made, and this Court may accept, reject, or modify, in whole or in part, the recommendations contained in the Report. 28 U.S.C. § 636(b)(1). Any written objection must specifically identify the portion of the Report to which the objection is made and the basis for the objection. *Id.*

### II. Judicial Review of a Final Decision

The federal judiciary plays a limited role in the administrative scheme as established by the Social Security Act. Section 205(g) of the Act provides that "[t]he findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Consequently, judicial review . . . of a final decision regarding disability benefits is limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied." *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). "Substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is

"substantial evidence."

*Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebreeze*, 368 F.2d 640, 642 (4th Cir. 1966)). In assessing whether substantial evidence exists, the reviewing court should not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency. *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (alteration in original).

## **DISCUSSION**

**I.   The Commissioner's Final Decision**

The Commissioner is charged with determining the existence of a disability. The Social Security Act, 42 U.S.C. §§ 301-1399, defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to result in death or which has lasted or can expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). This determination involves the following five-step inquiry:

> [The first step is] whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c) If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App. I. If so, the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a) If the answer is in the affirmative, the final consideration looks to whether the impairment precludes that claimant from performing other work.

*Mastro*, 270 F.3d at 177 (citing 20 C.F.R. § 416.920).

If the claimant fails to establish any of the first four steps, review does not proceed to the next step. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1993). The burden of production and proof remains with the claimant through the fourth step. However, if the claimant successfully reaches step five, then the burden shifts to the Commissioner to provide evidence of a significant number of jobs in the national economy that the claimant could perform, taking into account the claimant's medical condition, functional limitations, education, age, and work experience. *Walls*, 296 F.3d at 290.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 18, 2013, the application date. Next, the ALJ determined that Plaintiff has the following severe impairments: obesity, seizure disorder, schizophrenia, learning disorder, and history of asthma. However, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. With regard to Plaintiff's residual functional capacity ("RFC"), the ALJ found that Plaintiff could perform the full range of work at all exertional levels but with the following non-exertional limitations: no exposure to temperature extremes, high humidity, concentrated pulmonary irritants, and work hazards; simple, routine, repetitive tasks with no direct customer service; no work in a team setting; only occasional changes in work setting or procedure; no fast-paced production work; and no work requiring good reading or math skills. The ALJ found that Plaintiff has no past relevant work but that, considering her age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that she could perform. Therefore, the ALJ found that Plaintiff was not disabled since the date her application was filed.

## II. The Court's Review

In this action, Plaintiff asserts that the ALJ failed to properly analyze whether she meets the requirements of Listing 12.05C. The Magistrate Judge considered Plaintiff's claim and found that substantial evidence supports the ALJ's finding that Plaintiff failed to satisfy the requirements of Listing 12.05C. Plaintiff filed objections to the Magistrate Judge's Report, which the Court addresses below.

### A. Listing 12.05C

As the Magistrate Judge explained, in determining whether a claimant's impairments meet or equal a listed impairment, the ALJ identifies the relevant listed impairments and compares the listing criteria with evidence concerning Plaintiff's symptoms. *Ezzell v. Berryhill*, 688 F. App'x 199, 200 (4th Cir. 2017) (quoting *Cook v. Heckler*, 783 F.2d 1168, 1172-73 (4th Cir. 1986)) ("When there is 'ample evidence in the record to support a determination' that the claimant's impairment meets or equals one of the listed impairments, the ALJ must identify 'the relevant listed impairments' and compare 'each of the listed criteria to the evidence of [the claimant's] symptoms.' ").

At the time of the ALJ's decision, Listing 12.05C stated, in relevant part:

Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period: i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

. . .

C. A valid verbal, performance, or fully scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

. . . .

20 C.F.R. Pt. 404, Subpt. P, Appl. 1, § 12.05 (effective August 12, 2015, through May 23, 2016). Thus, Listing 12.05C first requires "subaverage general intellectual functioning with deficits in adaptive functioning initially manifested" before age 22. *Id.* The Fourth Circuit has described this as "Prong 1" of Listing 12.05, and it consists of two elements: (1) deficits in adaptive functioning and (2) a deficiency that manifested itself before age 22. *Hancock v. Astrue*, 667 F.3d 470, 473, 475 (4th Cir. 2012). Next, Paragraph C requires "[a] valid verbal, performance, or fully scale IQ of 60 through 70," which the Fourth Circuit has described as "Prong 2," and "a physical or other mental impairment imposing an additional and significant work-related limitation of function," which the Fourth Circuit has described as "Prong 3." *Id.* at 473.

Here, the ALJ found that Plaintiff failed to establish Prong 1 because she did not establish the required limitations in adaptive functioning that manifested before age 22. With respect to Prong 2, the ALJ found that Plaintiff did not have a qualifying IQ score. In so finding, the ALJ rejected the consultative examiners' recent testing of Plaintiff and instead considered Plaintiff's 2004 full-scale IQ score of 74. The ALJ did not specifically address Prong 3 because he found Plaintiff failed to meet Prongs 1 and 2 of the listing.

In her Report, the Magistrate Judge found that substantial evidence supports the ALJ's findings as to Prong 1. Specifically, the Magistrate Judge explained:

> Here, the ALJ based his determination that Plaintiff did not have deficits in adaptive functioning on, among other things, the Plaintiff's full scale IQ score of 74 during school and the fact that Plaintiff completed high school, though with the assistance of special education resources. [R. 20.] The ALJ also noted that Plaintiff was independent in her activities of daily living and that there was no indication of her inability to follow directions during the

6

> consultative exam. [R. 20.] Further, the ALJ noted Plaintiff testified at the hearing that "[s]he is able to perform personal need tasks independently and spends her day cleaning and spending time with her family." [R. 21.] The ALJ determined that, even if Plaintiff's decrease in IQ was found to be valid, Plaintiff did not have deficits in adaptive functioning during the developmental period. [R. 20.] On this point, he noted that her IQ in school was a 74 and that, although Plaintiff was in special education, she testified that she was a "good student" and she completed high school with a certificate of completion. [R. 20.] The ALJ also noted that Plaintiff's mother testified at the hearing that Plaintiff's "reading and writing are normal, but she has difficulty comprehending math," although she can add and subtract. [R. 21.]

(ECF No. 24 at 20.) With regard to Prong 2, the Magistrate Judge agreed with Plaintiff that the ALJ improperly used only the full-scale IQ score of 74 under his Listings analysis, and failed to consider the lower nonverbal score of 70. *See Lyles v. Colvin*, No. 1:14-cv-2042-RMG, 2015 WL 1931398, at *14 (D.S.C. April 28, 2015) (quoting 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00(D)(6)(c)) ("'In cases where more than one IQ isn customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05.'"). Nevertheless, the Magistrate Judge found this error to be harmless because, even assuming Plaintiff had a qualifying IQ score to establish Prong 2 of the Listing requirements, Plaintiff failed to meet Prong 1. The Magistrate Judge also addressed Prong 3, noting that if Plaintiff could establish Prongs 1 and 2, then she would necessarily establish Prong 3 because the ALJ concluded that Plaintiff had severe impairments at Step 2. However, because the Magistrate Judge found that substantial evidence supported the ALJ's finding as to Prong 1, the Magistrate Judge noted that any error as to Prong 3 is harmless.

In her objections, Plaintiff asserts:

Both the ALJ and the Magistrate Judge committed error in determining and

7

> reviewing whether Ms. Pinckney met the "adaptive functioning" requirements before age 22. Both missed or failed to properly weigh and explain multiple facts and indications in the record which overwhelmingly support significant deficits in adaptive functioning during the required time period.
>
> . . .
>
> The first error is in how both Magistrate and ALJ dealt with Ms. Pinckney's high school career. Both mistakenly conflated her certificate of completion in special education with the earning of a high school diploma. The two are most assuredly not equivalent in any fashion.

(ECF No. 25 at 3.) Plaintiff contends that the ALJ failed to explain how Plaintiff's special education classes and her deficits in academic functioning weighed in his decision. Plaintiff objects that the ALJ gave disproportionate weight to her every day activities and failed to acknowledge that Plaintiff has never lived independently and has never married or had children. Plaintiff contends that all of the activities and abilities relied upon by the ALJ are in the context of her continuing to live in the role of a minor, dependent upon the physical, emotional, and financial support of her parents. (*See* ECF No. 25 at 5.)

As the Magistrate Judge explained, with regard to Prong 1, "[d]eficits in adaptive functioning can include limitations in areas such as communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." *Jackson v. Astrue*, 467 F. App'x. 214, 218 (4th Cir. 2012) (citing *Atkins v. Virginia*, 536 U.S. 304, 309 n.3 (2002)). In *Weedon v. Astrue*, No. 0:11-2971-DCN-PJG, 2013 WL 1315311, at *5-6 (D.S.C. Jan. 31, 2013), adopted by 2013 WL 1315206 (D.S.C. Mar. 28, 2013), the court listed the following factors as relevant for ALJs to consider in determining whether an individual has deficits in adaptive functioning to satisfy Listing 12.05: the individual's actual IQ score; the individual's diagnosis; whether the individual is illiterate; whether the individual has ever lived independently; whether the

8

individual has ever provided care for others or whether she is dependent on others for care; school records and past academic performance; work history; and the tasks the individual is able to undertake. *See Smith v. Berryhill*, No. CV 1:17-1887-JMC-SVH, 2018 WL 2344540, at *15 (D.S.C. Mar. 23, 2018), adopted by 2018 WL 2332074 (D.S.C. May 22, 2018); *see also* 20 C.F.R. part 404, Subpt. P, Appendix 1, § 12.00(C)(1)-(3). "[C]ase law shows that the issue of whether a claimant manifested deficit in adaptive functioning during the developmental period is a fact-specific inquiry with few bright-line rules." *Stanfield v. Berryhill*, No. 2:17-CV-00362-TMC-MGB, 2018 WL 3687971, at *6 (D.S.C. July 18, 2018), adopted by 2018 WL 3660114 (D.S.C. Aug. 2, 2018) (citations omitted).

Here, as an initial matter, the Court disagrees with Plaintiff's assertion that both the ALJ and the Magistrate Judge conflated her certificate of completion with earning a high school diploma. In his decision, the ALJ clearly remarked that "although she was in special education, she indicated she was a good student and she completed high school with a certificate of completion." (ECF No. 10-2 at 21.) Later in his decision, the ALJ again remarked, "She completed high school with a certificate of attendance." (*Id.* at 22.) Thus, nowhere does the ALJ indicate that Plaintiff earned a regular state high school diploma.

Likewise, in her Report, the Magistrate Judge noted that the ALJ acknowledged both Plaintiff's special education classes and Plaintiff's mother's testimony that Plaintiff's "reading and writing are normal, but she has difficulty comprehending math," and "can add and subtract a little." (*See* ECF No. 24 at 20 (citing ECF No. 10-2 at 22.).) The Magistrate Judge further explained:

> With regard to her special education needs, Plaintiff was assessed with traumatic brain injury and was provided accommodations pursuant to an Individualized Education Program ("IEP"). Notes from Plaintiff's twelfth grade

9

> IEP concerning her academic and functional strengths and needs described Plaintiff as "currently comprehending reading below that of her grade level peers," but noted that she "has made significant gains in reading and language through the use of direct instruction." [R. 269.] Importantly, the IEP summary also noted Plaintiff "has very good written language skills," "is creative in her writing and can write compositions of 13 paragraphs," and "has good word recognition skills," although she "needs additional practice with comprehension when she reads." [R. 269.]

(ECF No. 24 at 20-21.) The Court ultimately agrees with the Magistrate Judge that the ALJ did not err in his consideration of Plaintiff's functional academic skills.

Next, with regard to Plaintiff's other alleged deficits in adaptive functioning, the Court also agrees with the Magistrate Judge that substantial evidence supports the ALJ's finding. As the Magistrate Judge explained:

> At the hearing before the ALJ, Plaintiff testified that she lives with her mom, her brother, and her sister, but that she can dress herself and take showers by herself, and that she helps around the house, cleans the house, and usually spends her day visiting with her family. [R. 60.] In her Adult Function Report, Plaintiff reported that she prepares her own meals [R. 318]; shops for herself when she needs things [R. 319]; she enjoys writing and watching television [R. 320]; spends time with others by talking on the phone, sometimes going out with them, and attending church and church related activities [R. 320]; and "get[s] along with authority figures well," can "handle stress well," and can "handle changes well" [R. 322.] Accordingly, the ALJ's decision that there is no evidence of adaptive deficits or manifestation before age 22 is supported by substantial evidence.

(ECF No. 24 at 21-22.) Thus, the Court agrees with the Magistrate Judge that substantial evidence supports the ALJ's finding that Plaintiff failed to meet the requirements of Prong 1 because she did not have deficits in adaptive functioning that initially manifested before age 22. Accordingly, the Court overrules Plaintiff's objections, as the Court finds that the Magistrate Judge appropriately considered the issues Plaintiff raises in her objections. In addition, because the Court finds that substantial evidence supports the ALJ's decision at Prong 1, the Court agrees with the Magistrate Judge that Plaintiff cannot meet the

requirements of Listing 12.05.[1] Ultimately, it is not the Court's role to "reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (alteration in original) (internal quotation marks omitted); *see also Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996) ("We must sustain the ALJ's decision, even if we disagree with it, provided the determination is supported by substantial evidence.").

## CONCLUSION

The Court finds that the Magistrate Judge properly summarized the facts and applied the correct principles of law when she determined that Plaintiff failed to show that the Commissioner's decision was not supported by substantial evidence or that it was reached through application of an incorrect legal standard. Accordingly, it is hereby **ORDERED** that the Magistrate Judge's Report (ECF No. 24) is adopted and incorporated herein; Plaintiff's objections (ECF No. 26) are overruled; and the Commissioner's final decision denying benefits is affirmed.

**IT IS SO ORDERED.**   /s/Bruce H. Hendricks
The Honorable Bruce H. Hendricks
United States District Judge

March 15, 2019
Charleston, South Carolina

---

[1] The Court also notes that it agrees with the Magistrate Judge that the ALJ erred in his Prong 2 analysis by overlooking Plaintiff's nonverbal IQ score of 70 and instead relying on Plaintiff's full-scale IQ score of 74. Nevertheless, the Court finds this error harmless under the circumstances because, even with a qualifying IQ score at Prong 2, substantial evidence supports the ALJ's finding that Plaintiff failed to establish the requirements of Prong 1. Likewise, the Court agrees with the Magistrate Judge that any error as to Prong 3 would be harmless.